IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| **KIRSTYN PAIGE BASHAW,** 136 North St., Gahanna, OH 43230 | : : : : | Case No. 22CV003645 |
| Plaintiff, | : : | Judge David C. Young |
| v. | : : : | |
| **MAJESTIC CARE OF WHITEHALL, LLC** c/o Registered Agent 4805 Langley Ave., Whitehall, OH 43213 | : : : : : : | **Jury Demand Endorsed Hereon** |
| Defendant. | : : | |

## AMENDED COMPLAINT

NOW COMES Plaintiff Kirstyn Paige Bashaw ("Plaintiff") and proffers this Amended Complaint for damages against Defendant Majestic Care of Whitehall, LLC ("Defendant").

### JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, the Ohio Revised Code, and Ohio common law.

2. Subject matter jurisdiction and venue are proper in this forum pursuant to Ohio R. Civ. P 3(B)(1), 3(B)(2), 3(B)(3), and 3(B)(6) because Plaintiff's claims arise under the laws of the State of Ohio; Defendant resides in Franklin County; Defendant conducts substantial business in Franklin County; Defendant conducted activities giving rise to Plaintiff's claims in Franklin County; and Franklin County is the county in which all or part of the claims for relief arose.

### THE PARTIES

3. Plaintiff is an individual, a United States citizen, and a resident of Franklin County,

1

Ohio.

4. Defendant is a domestic Limited Liability Company registered to do business in Ohio and conducting business in Franklin County, Ohio.

5. Defendant's principal office is located at 777 E Main Street, Westfield, IN 46074.

6. Defendant is a skilled nursing home and residential care facility as those terms are defined under Ohio Revised Code Section 3721.01 *et seq.*

7. Defendant does not specialize in in-patient psychiatric care. Residents with urgent or emergency psychiatric care needs are transferred to other facilities better equipped to respond to the resident's psychiatric needs.

8. Defendant's facility includes a locked memory unit for residents with cognitive impairments such as Dementia or Alzheimer's.

9. Defendant is an "employer" of Plaintiff's as defined by Title VII and Ohio law.

10. Plaintiff is an "employee" of Defendant's as defined by Title VII and Ohio law.

## FACTUAL BACKGROUND

11. Plaintiff began her employment with Defendant on or around November 8, 2021.

12. Plaintiff is a Licensed Social Worker.

13. Defendant operates a skilled nursing home and residential care facility located at 4805 Langley Ave., Whitehall, OH 43213.

14. At all times relevant herein, Plaintiff was employed by Defendant at the Whitehall facility in the position of Director of Social Services.

15. In this position, Plaintiff was responsible for overseeing and evaluating all aspects of the facility's social services and facilitating resident admissions and discharges.

16. Upon admission to the facility, Plaintiff assessed the resident's functional

2

capabilities and service needs, and then collaborate with other facility team members to create care planning and Minimum Data Set ("MDS") assessments.

17.     Additionally, Plaintiff was responsible for planning, coordinating, and implementing services to residents to ensure their social and psycho-social well-being while residing in the facility.

18.     Shortly after Plaintiff's employment began, she observed Defendant's Whitehall facility's Executive Director, Edward Beatrice, making racially offensive and insensitive comments in the workplace on several occasions. Plaintiff also observed Mr. Beatrice harass and discriminate against female employees on the basis of gender on several occasions.

19.     In addition, shortly after Plaintiff's employment began, Plaintiff began to grow concerned with the unusually high number of resident deaths and other preventable serious medical incidents taking place at the Whitehall facility.

20.     Plaintiff made several reports about specific suspected resident abuse and/or neglect to Mr. Beatrice and to the facility's Director of Nursing, Amia Ford.

21.     Plaintiff's reports were made in good faith about suspected resident abuse and/or neglect as those terms are defined by R.C. § 3721 *et seq.*

22.     In one instance, Plaintiff reported that she in good faith suspected that a nurse who treated residents in the facility's locked memory unit was abusing and/or neglecting residents. Specifically, that the nurse failed to treat and/or care for a resident's (hereinafter referred to as "Resident A") leg infection.[1]

23.     Resident A's leg infection worsened due to the abuse and/or neglect, ultimately

---
[1] For confidentiality purposes, residents of the Whitehall facility will be referred to be assigned alphabet letters.

3

Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Jan 27 5:21 PM-22CV003645
Case: 2:23-cv-00291-SDM-CMV Doc #: 7 Filed: 01/26/23 Page: 4 of 12 PAGEID #: 82
0G230 - Q53

resulting Resident A's leg being amputated.

24. Plaintiff believed that the amputation would not have occurred but for the abuse and/or neglect.

25. Plaintiff's reports on suspected resident abuse and/or neglect were ignored.

26. Only after family members of residents also began raising concerns about resident abuse and/or neglect did Defendant take any action. However, this action was inadequate to address the suspected abuse and/or neglect of residents and the suspected abuse and/or neglect continued.

27. Edward Beatrice merely removed the nurse suspected of engaging in resident abuse and/or neglect incident described above from the resident care rotation for less than one week. Defendant then placed that same nurse back on the resident care rotation to treat and/or provide care to the same residents the nurse had previously abused and/or neglected.

28. The abuse and/or neglect of residents continued after the nurse was placed back onto the care rotation.

29. On or around February 28, 2022, Plaintiff made a good faith report to Human Resource Representative, Chandler Kuhn, that suspected resident abuse and/or neglect was occurring at the Whitehall facility. Plaintiff reiterated the reports she previously made to Edward Beatrice and Amia Ford, including the specific suspected abuse and/or neglect involving Resident A.

30. Plaintiff also made a good faith report that Edward Beatrice was not adequately addressing suspected resident abuse and/or neglect taking place at the facility, and that Whitehall leadership's failure to address the suspected abuse and/or neglect created a substantial and imminent risk of harm to the facility's residents.

4

Case: 2:23-cv-00961-SDM-CMV Doc #: 7 Filed: 01/26/23 Page: 5 of 12 PAGEID #: 33
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Jan 17 5:22 PM-22CV006453
0G230 - Q54

31.     Finally, Plaintiff reported to Mr. Kuhn that she was aware of allegations that Mr. Beatrice was engaging in sexual harassment and race-based discriminatory actions at Defendant's facility.

32.     Plaintiff reported that she planned to elevate her reports of suspected patient abuse and/or neglect and her report of unlawful workplace racism and sexual harassment to the VP of Human Resources and Syntrio Lighthouse Services, Defendant's third-party ethics and compliance hotline provider.

33.     On or around March 1, 2022, the Regional Vice President of Operations, Matt Trammell, held a meeting at the Whitehall facility and discouraged staff, including Plaintiff, from making or escalating reports or complaints to Defendant's management, Syntrio Lighthouse Services, or the Department of Health.

34.     Matt Trammell made this announcement to discourage Defendant's employees, including Plaintiff, from attempting to escalate or make further reports about suspected resident abuse and/or neglect and/or reports of unlawful workplace racism and sexual harassment.

35.     On or around March 2, 2022, a former Whitehall resident (hereinafter referred to as "Resident B"), that had been previously transferred to Mt. Carmel East for an emergency psychiatric hold, was released from Mt. Carmel East and brought back to the Whitehall facility for replacement in residence.

36.     Resident B was still experiencing extreme psychological issues the Whitehall facility was not equipped to respond to or treat.

37.     Edward Beatrice ordered Whitehall staff to place Resident B in the facility's locked memory unit, against Resident B's consent.

38.     Edward Beatrice ordered Resident B to be placed in the locked unit for staff

5

convenience and/or as a substitute for treatment.

39. Upon information and belief at the time Edward Beatrice ordered the resident to be placed in the facility's locked unit, Resident B was not incompetent, under guardianship, or diagnosed with cognitive functioning disorder such as dementia.

40. Plaintiff believed that placing Resident B in the locked memory unit constituted a physical restraint and/or physical abuse and/or psychological abuse, and/or abuse and/or neglect as those terms are defined under R.C. § 3721 *et seq.*

41. Upon discovering that Resident B had been locked in the memory unit, and the circumstances thereof, Plaintiff made a good faith report to Edward Beatrice that such conduct amounted to abuse and/or neglect of Resident B, such conduct and/or activity and/or practice was unlawful, that the facility was not equipped to provide the treatment and/or care required to adequately respond to Resident B's psychiatric needs, and continuing to keep Resident B in the locked unit under these circumstances presented a substantial and imminent risk of harm to Resident B, other residents, and the facility's staff.

42. Edward Beatrice stated that no action would be taken to address Plaintiff's report.

43. Plaintiff had no choice but to leave the Whitehall facility and refuse to acquiesce to and/or consent to and/or ratify and/or participate in the admission and placement in residence of Resident B in a manner Plaintiff believed in good faith to constitute unlawful resident abuse and/or neglect and a substantial and imminent risk of harm to Resident B, other residents, and facility staff.

44. After leaving the Whitehall facility Defendant's VP of Human Resources, Melany Nieset called Plaintiff and instructed her not to return to work while an investigation was conducted.

6

45. On or around March 3, 2022, Melany Nieset called Plaintiff and informed her that she was being placed on an involuntary leave as the company investigated Plaintiff for alleged attendance and performance issues.

46. Prior to this call, Plaintiff was never informed that her performance was not meeting expectations or that her attendance was problematic.

47. On or around March 4, 2022, Melany Nieset called Plaintiff and interviewed her as a component of the investigation.

48. During the call, Plaintiff reported her concerns about suspected resident abuse and/or neglect including the incidents regarding Resident A and Resident B. Melany Nieset stated that Defendant was already aware of Plaintiff's reports including the February 28, 2022, report Plaintiff made to Chandler Kuhn.

49. During the call, Ms. Nieset was unable to provide Plaintiff with any examples of her alleged performance or attendance issues.

50. On or around March 9, 2022, Melany Nieset called Plaintiff and informed her that Defendant was terminating her employment due to performance and attendance.

51. Plaintiff's purported performance and attendance issues were manufactured by Defendant as pretext for Defendant's unlawful retaliatory conduct.

52. Plaintiff was terminated in retaliation for her reports about suspected resident abuse and/or neglect and/or her report about concerns for resident and staff safety and/or her report of sexual harassment and race discrimination.

53. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful actions set forth herein.

54. Plaintiff received a Notice of Right to Sue on January 3, 2023 and filed this

7

Amended Complaint within 90 days of receipt of her Notice of Right to Sue.

## COUNT I
### R.C. 3721.24: Retaliatory Termination

55. All of the preceding paragraphs are realleged as if fully rewritten herein.

56. Plaintiff engaged in protected activities when she reported suspected abuse and/or neglect of a resident and/or indicated an intention to make such a report.

57. Defendant was aware that Plaintiff was engaging in protected activities when she reported suspected abuse and/or neglect of a resident and/or indicated an intention to make such a report.

58. Defendant took an adverse action against Plaintiff in retaliation for making the reports, including by placing her on an involuntary leave, by manufacturing purported attendance and performance issues, and by terminating her employment.

59. Defendant lacks a legitimate business justification for terminating Plaintiff's employment.

60. Plaintiff's purported performance and attendance issues were merely pretext for Defendant's retaliatory conduct.

61. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

62. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

8

## COUNT II
### Wrongful Termination in Violation of Public Policy
### (Plead in the Alternative)

63. All of the preceding paragraphs are realleged as if fully rewritten herein.

64. Pursuant to R.C. § 4101.11; R. C. § 4101.12; R.C. 3721.24 and other similar statutes, administrative rules, regulations, and Ohio common law, a clear public policy exists in favor of ensuring patient and resident health, safety, and wellbeing in skilled nursing home and residential care facilities; reporting suspected patient and resident abuse and/or neglect, and any other unsafe condition, practice, or activity; ensuring workplace safety for employees and frequenters of the employer's premises, including patient, resident, or staff frequenters; and reporting unsafe conditions, practices, or activities that endanger residents, patients, employees, staff or other frequenters of the employer's place of business.

65. Defendant's termination of employees under circumstances like those involved in Plaintiff's retaliatory termination would jeopardize this public policy.

66. Defendant's termination of Plaintiff's employment was motivated by conduct related to the public policies referenced above.

67. Defendant lacks an overriding legitimate business justification for terminating Plaintiff's employment.

68. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

69. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees

and costs.

## COUNT III
**Retaliation Based on Complaint of Sexual Harassment and Race Discrimination
Title VII of the Civil Rights Act, et seq.**

70. All of the preceding paragraphs are realleged as if fully rewritten herein.

71. Plaintiff engaged in a protected activity when she reported allegations of unlawful workplace racism and sexual harassment to a member of Defendant's HR staff.

72. Defendant was aware that Plaintiff engaged in a protected activity.

73. Defendant retaliated against Plaintiff for engaging in the abovementioned protected activity by terminating Plaintiff and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of her employment after she made her report.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious emotional distress and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

75. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT IV
**Retaliation Based on Complaint of Sexual Harassment and Race Discrimination
Ohio Revised Code, Ch. 4112 et seq.**

76. All of the preceding paragraphs are realleged as if fully rewritten herein.

77. Plaintiff engaged in a protected activity when she reported allegations of unlawful workplace racism and sexual harassment to a member of Defendant's HR staff.

78. Defendant was aware that Plaintiff engaged in a protected activity.

79. Defendant retaliated against Plaintiff for engaging in the abovementioned

protected activity by terminating Plaintiff and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of her employment after she made her report.

80. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious emotional distress and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

81. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands monetary damages including back pay and benefits, front pay, compensatory damages, punitive damages, expert witness fees, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Carrie J. Dyer*
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-9899
Fax: (614) 547-3614
*Counsel for Plaintiff*

Case: 2:23-cv-00291-SDM-CMV Doc #: 7 Filed: 01/26/23 Page: 12 of 12 PAGEID #: 140
Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Jan 17 5:21 PM-23CV000364
0G230 - Q61

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

                                                */s/ Carrie J. Dyer*
                                                Carrie J. Dyer (0090539)